```
         UNITED STATES DISTRICT COURT FOR THE
               DISTRICT OF NEW HAMPSHIRE
```

United States of America

   v.                                        Criminal No. 07-252-JD
                                             Opinion No. 2008 DNH 197

Eduardo K. Fernandez-Avalos and
Maria C. Rosario

O R D E R

Codefendants Eduardo K. Fernandez-Avalos ("Fernandez") and his mother, Maria C. Rosario ("Rosario"), are charged with conspiracy to structure financial transactions in violation of 31 U.S.C. § 5324(a)(3). Before the court are (1) Fernandez's July 30, 2008, motion to suppress statements he made following his arrest, (2) Rosario's July 22, 2008, motion requesting severance, or, in the alternative, exclusion and/or redaction of the statements made by Fernandez following his arrest, and (3) her September 29, 2008, supplemental motion for severance. The government opposes the motions, although it did not file a written objection to Fernandez's motion to suppress.

With his motion, Fernandez submitted the affidavits of himself, his wife, Raquel Fernandez ("Raquel"), and his attorney, Martin K. Leppo. With her motion, Rosario submitted a Report of Investigation completed by the Drug Enforcement Administration ("DEA 6"). Evidentiary hearings were held on September 29, 2008,

and October 16, 2008.  Postal Inspector John J. Stassi testified for the government, and Raquel testified for the defense, with the aid of an interpreter.  Both Fernandez and the government submitted documentary evidence, including:  Fernandez's arrest warrant (Def. Ex. A), his phone records (Def. Ex. B), and a signed "Warning and Waiver of Rights" form of the United States Postal Inspection Service ("USPI") (Gov't Ex. 1).  No witnesses testified, and no additional evidence was submitted in support of Rosario's motion.  The following findings of fact are based upon the above listed materials, the affidavits, and testimony of the two witnesses at the hearing.

I.   Background

On December 12, 2007, Fernandez and Rosario were charged in a federal indictment with conspiracy to structure financial transactions in violation of 31 U.S.C. § 5324(a)(3), and arrest warrants were issued.  On December 18, 2007, at 6:00 a.m., Postal Inspectors Stassi and Julio Santiago, two other postal inspectors, two DEA Agents, and an officer of the Miami-Dade police force knocked on the door of Fernandez's residence in Miami, Florida.  Fernandez answered the door, and when he stepped outside, he was arrested and handcuffed.  The officers entered the residence with Fernandez after he requested permission to get

dressed.  Inside, Raquel and Rosario were told to sit down and were asked for their names.  Upon giving her name, Rosario was arrested as well.  After several requests from Raquel, Stassi went to his vehicle and produced the arrest warrant which Fernandez then read.  Raquel asked that she be allowed to make a call to their attorney.  Her request was denied for safety reasons, and she was told she could make the call after they left.  After the officers left with Fernandez and Rosario, Raquel called their attorney in Massachusetts, Martin Leppo, who was coincidentally boarding a plane to Florida when he received her call.  The officers did not tell Raquel where Fernandez and Rosario were being taken and neither she, nor Attorney Leppo, were able to locate them until that evening.

    Fernandez and Rosario were transported separately to the Miami-Dade County police station.  During the ride to the station, Fernandez stated that he had an attorney.  Suppression Hearing Transcript ("Supp. T."), Day I, at 69.  At the police station, Fernandez and Rosario were placed in separate rooms for questioning.  Stassi testified that it was a "tactical decision" not to bring them to the federal courthouse right away.  Supp. T., Day I, at 57, 80.  He also testified as follows concerning his understanding of an indicted person's right to counsel during questioning:

    MR. LEPPO:  And you knew from that indictment that Mr. Fernandez would be entitled to have an attorney to answer to [the] charges; isn't that right?

    STASSI:  I knew that before I asked him any questions he had the right to confer with an attorney.

    MR. LEPPO:  Okay, and you knew that just by being indicted he would have a right to have an attorney to represent him in a court of law, right?

    STASSI:  To represent him in a court of law?  Of course.

    MR. LEPPO:  And he would have a right to have an attorney to represent him if he was arrested and to be present to see what questions that were going to be asked of him, correct?

    STASSI:  No.  That is not my procedure.

    MR. LEPPO:  So you didn't know that he would have a right to have an attorney at all stages of all proceedings after indictment?  You didn't know that, sir?

    STASSI:  That's not the way I operate.

. . . .

    MR. LEPPO:  Are you familiar with your own manual from the Postal Authority?

    STASSI:  Yes.

. . . .

    MR. LEPPO:  Does it say anything in there as to when you have to advise somebody of their so-called Miranda rights?

    STASSI:  Yes.

    MR. LEPPO:  Okay, and you do that once a person is in custody, correct?

>    STASSI:  That is correct.
>
>    MR. LEPPO:  But if a person is not in custody and you know he's been indicted, does your manual say anything about whether or not you should make an inquiry if he has a lawyer?
>
>    STASSI:  I have not done that before.
>
>    MR. LEPPO:  Is it in your manual?
>
>    STASSI:  I don't know.

Supp. T., Day I, at 43, line 11 through 45, line 16.

Stassi and Santiago, who spoke Spanish, began the interview with Fernandez, who stated that he was comfortable with English, around 7:00 a.m.  Stassi read aloud a USPI "Warning and Waiver of Rights" form, which contained a statement of <u>Miranda</u> rights, and presented it to Fernandez.  At 7:07 a.m., Fernandez signed the portion of the form acknowledging that he read and understood his rights.  Both inspectors witnessed his signature and signed the form.  Fernandez refused to sign the waiver portion of the form and told the inspectors that he would not make any statements without his attorney.  No questions were posed to Fernandez.

Stassi then discussed transfer arrangements for Fernandez and Rosario with Santiago.  Fernandez asked where they were going, and Stassi told him that he and his mother were going to be transported to the federal courthouse.  Fernandez stated that he had changed his mind and would talk if it would help his

mother.  Stassi told Fernandez that he could not make any promises in that regard and that they could not talk with him unless he waived his rights.  The form indicates that the waiver of rights portion was signed at 7:20 a.m., and Stassi testified that he saw Fernandez sign it.[1]

Stassi told Fernandez that he was arrested for structuring the purchase of over fifty postal money orders in New Hampshire and Massachusetts during February of 2007.  Stassi then asked him who purchased the money orders.  Fernandez responded that there was "no way" he could have purchased them in two days.  Supp. T., Day I, at 21.  Stassi told Fernandez that they had evidence that he had help and that his mother had been identified from a photo.  Fernandez denied that his mother was involved.  When he was shown a spreadsheet of all the money orders, Fernandez responded, "In two days I bought those?"  Supp. T., Day I, at 21.  Stassi said that the money orders were made payable to Alliance Title for the purchase of real estate in Grant, Florida.  Fernandez

---

[1] There is some dispute regarding the signature on the waiver portion of the form.  At both hearings, the defense argued that the signature on the waiver portion of the form did not look like Fernandez's earlier signature on the acknowledgment portion of the form. Upon inspection of both signatures, the court acknowledges that they are dissimilar.  However, Inspector Stassi testified that he witnessed the defendant sign the waiver, and Fernandez does not argue that he did not sign it.  The court, therefore, accepts the signature on the waiver portion of the form as belonging to Fernandez.

acknowledged this was true and stated that the property was purchased for personal use.

Stassi then asked questions about a company called Guede L. Enterprises, his wife Raquel, his current residence, and the residence of his parents.  Fernandez answered all these questions.  Stassi also asked about another case where the DEA found his mother's name, marked as "Maria the cleaning lady," and her phone number in the electronic organizer of an arrested individual who was found in possession of cocaine.  Rosario Mem. on Motion to Sever, Ex. A, DEA 6, at 3.  Fernandez explained that his mother had never been a cleaning lady, that she once owned a supermarket in Miami, and that she was just a very friendly person.  Stassi asked him about numerous other individuals and their relation to him, which Fernandez answered.

Stassi then asked Fernandez where the money came from for the money orders, and he responded: "Now that's the one I'm not going to talk about."  Id.  Stassi asked why he went to eight different post offices, and Fernandez responded that he "had cash," it took him "a long time to save that money," and he "really wanted that piece of land."  Id.  The interview concluded, and Fernandez and Rosario were transported to the United States District Court for the District of Southern Florida around 9:00 a.m.

II.  Discussion

Fernandez argues that his statements must be suppressed because they were made in violation of his Fifth and Sixth Amendment rights, and because there was an unreasonable delay in bringing him before a magistrate.  Rosario argues that the admission of these statements at a joint trial would violate her Sixth Amendment Confrontation Clause rights pursuant to Bruton v. United States, 391 U.S. 123 (1968), and Crawford v. Washington, 541 U.S. 36 (2004).

A.   Fernandez – Sixth Amendment Right to Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend VI. The right to counsel is triggered "at or after the time that judicial proceedings have been initiated . . . 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  Fellers v. United States, 540 U.S. 519, 523 (2004) (quoting Brewer v. Williams, 430 U.S. 387, 398 (1977)); see United States v. Coker, 433 F.3d 39, 42 (1st Cir. 2005). "[T]he Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the

accused and a state agent." Maine v. Moulton, 474 U.S. 159, 176 (1985). The government may not, therefore, "'intentionally creat[e] a situation likely to induce [the accused] to make incriminating statements without the assistance of counsel.'" Moulton, 474 U.S. at 174 (quoting United States v. Henry, 447 U.S. 264, 274 (1980)).

An accused may, however, waive his Sixth Amendment right to counsel, and he may do so without the presence of counsel. See Fellers, 540 U.S. at 523 (citing Patterson v. Illinois, 487 U.S. 285, 292 (1988)). A waiver "is valid only when it reflects 'an intentional relinquishment or abandonment of a known right or privilege.'" Patterson, 487 U.S. at 292 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "[T]he accused must 'know what he is doing' so that 'his choice is made with eyes open.'" Patterson, 487 U.S. at 292 (brackets omitted) (quoting Adams v. United States, 317 U.S. 269, 279 (1942)). The government carries the burden of establishing that the defendant's waiver was executed knowingly, intelligently, and voluntarily. Patterson, 487 U.S. at 292; Michigan v. Jackson, 475 U.S. 625, 633 (1986). The court will "indulge every reasonable presumption against waiver" and all "[d]oubts must be resolved in favor of protecting the constitutional claim." Jackson, 475 U.S. at 633; see also United States v. Leon-Delfis, 203 F.3d 103, 110 (1st Cir. 2000).

To determine the validity of a waiver, the "key inquiry" is whether the accused was "made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel." Patterson, 487 U.S. at 292-93.  The latter inquiry requires that the accused is aware of "what could be done with any statements he might make, and therefore, what benefit could be obtained by having the aid of counsel while making such statements." Id. at 294.

A valid waiver of Fifth Amendment rights may constitute a knowing and intelligent waiver of the Sixth Amendment right to counsel in many circumstances.  See id. at 296, n.9; United States v. Boskic, No. 07-1188, 2008 WL 4648362, at *12, n.17 (1st Cir. Oct. 22, 2008).  When an accused has retained counsel, however, a Fifth Amendment waiver may be ineffective in waiving the Sixth Amendment right to counsel, because "a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." Patterson, 487 U.S. at 290, n.3; Boskic, 2008 WL 4648362, at *12, n.17.  For example, "where a suspect was not told that his lawyer was trying to reach him during questioning," the Supreme Court has noted that "in the Sixth Amendment context, [a Miranda] waiver would not be valid." Patterson, 487 U.S. at 297, n.9.

10

Moreover, when the defendant actually requests the assistance of counsel, "the analysis changes markedly." Id. at 290, n.3. In such a case, the waiver is invalid "if police initiate interrogation after a defendant's assertion . . . of his right to counsel." Jackson, 475 U.S. at 636. On the other hand, if the defendant initiates the conversation and executes a proper waiver, admission of his statements will not violate his Sixth Amendment rights. Patterson, 487 U.S. at 291; Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); Leon-Delfis, 203 F.3d at 111.

Fernandez argues that his Sixth Amendment rights were violated because the interview was commenced without his counsel present and the Postal Inspectors prevented him and his wife from contacting his attorney; the waiver was not knowing and intelligent; and he was interrogated after he had invoked his right to counsel. He argues that even if it were shown that he initiated the conversation with the inspectors after he had refused to sign the waiver, the statements he made must be suppressed as the fruit of the preceding Sixth Amendment violation.

Fernandez first argues that his Sixth Amendment right to counsel was violated the moment the interview was commenced without his counsel present. Fernandez's Sixth Amendment right

11

to counsel attached when he was indicted on December 12, 2007, and he therefore had the right to have counsel present when Inspectors Stassi and Santiago questioned him on December 18, 2007. The Sixth Amendment generally does not bar government agents from initiating an interview with an accused and seeking a waiver of the accused's right to counsel in the absence of his counsel. See Fellers, 540 U.S. at 523; Patterson, 487 U.S. at 291-92; Brewer, 430 U.S. at 406. Here, however, Fernandez argues that he was represented by an attorney, that the inspectors were aware of this at the time of the interview, and that he and his wife were prevented from contacting the attorney.[2]

Both Raquel and Fernandez had informed Stassi that Fernandez had an attorney. The inspectors nevertheless made a "tactical decision" to interview Fernandez at the local police station. It is evident from Stassi's testimony that he did not understand the right to counsel that an indicted person has during questioning. Under these circumstances, the inspectors' initiation of the interview, in a custodial setting, and in the absence of Fernandez's retained attorney, was a violation of Fernandez's Sixth Amendment right to counsel. Cf. United States v. Monti,

---

[2] Fernandez argues that he was denied access to a phone after the interview, and at the federal court. The focus here, however, is on the facts leading up to and during Fernandez's statements which he seeks to suppress.

557 F.2d 899, 904 (1st Cir. 1977) ("Where . . . defendant clearly and unequivocally evidenced his desire not to have counsel present at a self-initiated, non-custodial meeting, it would have served no useful purpose to have suppressed statements made at that meeting on the ground of counsel's absence.")  The execution of a Miranda warning and waiver was therefore insufficient to waive Fernandez's Sixth Amendment right to counsel.  Patterson, 487 U.S. at 290, n.3; Boskic, 2008 WL 4648362, at *12, n. 17. Aside from the Miranda warning and waiver, the government produced no additional evidence of a valid Sixth Amendment waiver and has therefore failed to meet its burden.  Therefore, Fernandez's statements made during his interview with Inspectors Stassi and Santiago following his arrest are suppressed.

Given the court's conclusion on this issue, Fernandez's arguments regarding (1) the delay in bringing him before a magistrate, and (2) the alleged violations of his Fifth Amendment rights need not be addressed.  Similarly, Rosario's motion to sever her trial and to exclude Fernandez's statements need not be addressed.

## Conclusion

For the foregoing reasons, Fernandez's motion to suppress his statements made to USPI Inspectors Stassi and Santiago

13

(document no. 43) is granted, and Rosario's motions to sever (document nos. 38 and 47) are terminated as moot.

SO ORDERED.

                                          _____
                                          Joseph A. DiClerico, Jr.
                                          United States District Judge

November 7, 2008

cc: William E. Christie, Esquire
    Steven M. Gordon, Esquire
    Mark A. Irish, Esquire
    Martin K. Leppo, Esquire
    Paul J. Twomey, Esquire
    Marcie E. Vaughan, Esquire

14